## Richmond

### CHARLES S. ROBB, GOVERNOR OF VIRGINIA, ET AL.

V.

### SHOCKOE SLIP FOUNDATION

Record No. 821539.

January 18, 1985.

Present: All the Justices.

*Russell L. Boraas, Assistant Attorney General (Gerald L. Baliles, Attorney General; Walter A. McFarlane, Deputy Attorney General; J. Westwood Smithers, Jr., Senior Assistant Attorney General,* on briefs), for appellants.

*James F. Stutts (Patrick M. McSweeney; McSweeney, Stutts & Burtch,* on brief), for appellee.

POFF, J., delivered the opinion of the Court.

Shockoe Slip Foundation (Shockoe), a non-profit corporation, filed a bill of complaint against the Governor of Virginia and the Virginia Department of General Services (collectively, the Commonwealth), seeking to enjoin the demolition of certain state-owned buildings situated in the 1200 and 1300 blocks of East Main Street in Richmond. Shockoe alleged, among other things, that the buildings had historic significance, that their demolition would adversely affect the Shockoe Slip historic district, and that the Commonwealth "failed to consider the Commonwealth's policy to conserve, develop and utilize its historical buildings" in violation of Va. Const. art. XI, § 1. The chancellor granted a restraining order *pendente lite* and heard evidence *ore tenus.*

The evidence showed that, in 1966, the Commonwealth prepared a long-range site plan for the Capitol Square complex. *See* Code § 2.1-489. The plan designated the properties on East Main Street as future sites for new state buildings. The plan was approved in 1971 by the Virginia Public Buildings Commission, the Art Commission (now, the Art and Architectural Review Council), and the Governor of the Commonwealth. In 1981, the Main Street buildings were vacated, state employees were moved into the newly-erected James Monroe Building, and the Commonwealth awarded contracts for demolition of the empty buildings. Because the cost was less than $100,000, an environmental impact statement was not required, Code §§ 10-17.107(b), -17.108, and the Commonwealth made no study for that purpose.

Although the Virginia Historic Landmarks Commission, created in 1966, had designated numerous state-owned buildings in

and adjacent to Capitol Square as historical monuments, it had taken no such action with respect to the buildings in question. In a letter dated November 2, 1981, the Chairman of the Commission advised the Governor that the building "which fronts on and impacts the Shockoe area directly across the street" was "very important architecturally and historically" and requested him to "consider deferring the demolition". The Governor declined, demolition commenced, the temporary injunction was entered, and demolition was discontinued.[1]

By final decree entered June 2, 1982, the chancellor ruled that "[t]he Constitution sets out a very broad public policy which binds all the State agencies and citizens of Virginia"; that "[t]he constitutional mandate applies to all projects"; and that "the State has not reasonably weighed all the factors that it is required to weigh and to consider under Article XI of the Constitution." Accordingly, the chancellor ordered that "the defendants are permanently enjoined from taking further action . . . until the defendants have documented their decision-making process in a manner which reflects that they have taken into account the Commonwealth's constitutionally stated public policy of preserving, utilizing, and developing its historical buildings."

Considering the thrust of the final decree, we believe the question presented by the assignment of error, although stated by the parties to this appeal in different ways, is whether Va. Const. art. XI, § 1,[2] is self-executing.

A constitutional provision is self-executing when it expressly so declares. See, e.g., Va. Const. art. I, § 8. Even without benefit of such a declaration, constitutional provisions in bills of rights and those merely declaratory of common law are usually considered self-executing. The same is true of provisions which specifically prohibit particular conduct. "Provisions of a Constitution of a negative character are generally, if not universally, con-

---

[1] Counsel for the parties aver at bar that, during the pendency of this appeal, one of the buildings considered historically significant by Shockoe, the former Planters National Bank Building, has been renovated for use by a state agency.

[2] § 1. **Natural resources and historical sites of the Commonwealth.**—To the end that the people have clean air, pure water, and the use and enjoyment for recreation of adequate public lands, waters, and other natural resources, it shall be the policy of the Commonwealth to conserve, develop, and utilize its natural resources, its public lands, and its historical sites and buildings. Further, it shall be the Commonwealth's policy to protect its atmosphere, lands, and waters from pollution, impairment, or destruction, for the benefit, enjoyment, and general welfare of the people of the Commonwealth.

strued to be self-executing." *Robertson* v. *Staunton,* 104 Va. 73, 77, 51 S.E. 178, 179 (1905); *see, e.g., Burns* v. *Board of Supervisors,* 218 Va. 625, 627, 238 S.E.2d 823, 825 (1977); *Swift & Co.* v. *Newport News,* 105 Va. 108, 120, 52 S.E. 821, 827 (1906); *Campbell* v. *Bryant,* 104 Va. 509, 514-15, 52 S.E. 638, 640 (1905). But Article XI, § 1, is not prohibitory or negative in character. Rather, it confines itself to an affirmative declaration of what the chancellor described as "very broad public policy".

■ This Court has never construed such a provision to operate *proprio vigore.* In *Newport News* v. *Woodward,* 104 Va. 58, 61-62, 51 S.E. 193, 194 (1905), we quoted with approval the following test, now published in 1 T. Cooley, Constitutional Limitations 167-68 (8th ed. 1927):

> A constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be employed and protected, or the duty imposed may be enforced; and it is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law.

■ Article XI, § 1, contains no declaration of self-execution, it is not in the Bill of Rights, it is not declaratory of common law, and it lays down no rules by means of which the principles it posits may be given the force of law. Instead, its language invites crucial questions of both substance and procedure. Is the policy of conserving historical sites absolute? If not, what facts or circumstances justify an exception? Does the policy apply only to the State and to state-owned sites, or does it extend to private developers and to privately-owned sites? Who has standing to enforce the policy? Is the Governor of the Commonwealth an essential party-defendant? Is the remedy solely administrative, solely judicial, or a mixture of the two? If the remedy is judicial, which court has jurisdiction over the subject matter and over the parties?

■ Such questions beg statutory definition, and we believe those who drafted and adopted the first section of Article XI recognized that fact. In the very next section, they were careful to provide that "[i]n the furtherance of such policy, the General Assembly may undertake the . . . protection of historical sites and buildings". Va. Const. art. XI, § 2. Shockoe discounts the lan-

guage of section 2 as purely permissive. But, considered contextually, its import is directory. If permissive only, it is meaningless, because Article IV, § 14, of the Constitution provides that "[t]he authority of the General Assembly shall extend to all subjects of legislation not herein forbidden or restricted". Since the General Assembly already possessed the authority mentioned in section 2, the only purpose for adding that section to Article XI was to instruct the General Assembly to enact statutes whereby the public policy declared in section 1 could be executed.

In effect, the chancellor ruled that Article XI, § 1, standing alone, required the Commonwealth to initiate an investigation of the historical significance of the buildings in question, to conduct what Shockoe described at bar as a "cost-benefit analysis", and to "document" its "decision-making process". That ruling was equivalent to a holding that the constitutional provision required the Commonwealth to prepare an environmental impact statement. We held to the contrary in *Rudder* v. *Housing Authority,* 219 Va. 592, 598, 249 S.E.2d 177, 180 (1978).

We hold, therefore, that Va. Const. art. XI, § 1, is not self-executing, and we will reverse the decree, dissolve the injunction, and dismiss the bill of complaint.

*Reversed and dismissed.*