# CIRCUIT COURT OF THE CITY OF RICHMOND

Ron Paul,
Delmar Dennis, et al.

v.

State Board of Elections

February 24, 1988

Case No. N-5652-4

By JUDGE RANDALL G. JOHNSON

Plaintiffs have filed this action seeking an injunction requiring the State Board of Elections to provide, on the official ballot for the November, 1988 general election, space to write in the names of candidates of the Libertarian Party for President and Vice-President of the United States, and the names of such candidates of the American party, as well as the names of the candidates for electors nominated by the Libertarian Party and the American Party and expected to vote for those parties' nominees for President and Vice-President. Plaintiffs are Ron Paul, the Libertarian Party's candidate for President in the November, 1988 general election; Delmar Dennis, the American Party's candidate for President in said election; and the Virginia affiliates of the Libertarian and American Parties. The State Board of Elections (the "Board") is the named defendant. The complaint alleges that in spite o the provision in Article II, § 3, of the Constitution of Virginia that "[i]n elections other than primary elections, provision shall be made whereby votes may be cast for persons other than the listed candidates or nominees," the Board has taken the position that voters will not be allowed to

write in the names of the Libertarian and American Parties' candidates.

The Board has demurred to the complaint and has also filed a motion to dismiss. The demurrer lists six grounds:

1. That the provisions of the Virginia Code dealing with presidential elections §§ 24.1-158 through 24.1-162 do not provide for write-in voting in presidential elections;

2. That the election laws of Virginia have consistently been interpreted and applied as not requiring or permitting write-in voting in presidential elections;

3. That Va. Code § 24.1-159 provides a clear and simple method by which electors for candidates for President and Vice-President for groups other than "political parties" may be placed on the ballot;[1]

4. That plaintiffs have not alleged that they will be irreparably injured should the court deny the requested relief;

5. That the Board has no authority to provide relief which is contrary to Va. Code §§ 24.1-158 through 24.1-162; and

6. That the language of Article II, § 3, of the Constitution of Virginia concerning write-in voting is not self-executing.

The Board's motion to dismiss is based on what the Board contends is the res judicata effect of an order entered by the Supreme Court of Virginia on October 29, 1984, in *Libertarian Party of Virginia v. State Board of Elections*, Record No. 841506, granting the Board's motion to dismiss the Libertarian Party's application for a writ of mandamus which contained the same allegations and sought the same relief -- though for the November, 1984 general election and with regard to the Libertarian Party only -- as are involved here. The parties have briefed all of the issues, and the court has heard oral argument of counsel. Because the doctrine of res judicata, if applicable, would be a complete bar to this action, it will be addressed first.

---

[1] See Va. Code Section 24.1-1(7) for the definition of "political parties."

The controlling principles applicable to res judicata are set out in *Storm v. Nationwide Insurance Company*, 199 Va. 130, 97 S.E. 2d 759 (1957):

> A judgment is not res adjudicata if it does not go to the merits of the case. To constitute a bar, it must appear either upon the face of the record or be shown by extrinsic evidence that the previous question was raised and determined in the former suit, and that the former suit was determined on its merits
> . . . .
> A judgment is on the merits when it amounts to a decision as to the respective rights and liabilities of the parties, based on the ultimate fact or state of facts disclosed by the pleadings or evidence, or both, and on which the right of recovery depends, irrespective of formal, technical, or dilatory objections or contentions
> . . . .
> The true test of the conclusiveness of a former judgment with respect to particular matters is identity of issues. If a particular point or question is in issue in the second action, and the judgment will depend on the determination of the particular point or question, a former judgment between the same parties will be final and conclusive in the second if that same point was in issue and adjudicated in the first suit. . . .
> The issue decided in the former action must have been identical with the issue presented in the second action, and the party now sought to be barred or one in privity with the party against whom the judgment was rendered. . .
> 199 Va. at 134.

Applying those principles here, it is obvious that the issue raised in this action is identical to the issue raised in the 1984 application to the Supreme Court; that is, whether Article II, § 3, of the Constitution

of Virginia requires the Board of Elections to allow write-in voting in presidential elections. The remaining question, then, is whether "it appear[s] either upon the face of the record or. . . [from] extrinsic evidence that the previous question was. . . *determined* in the former suit, and that the former suit was determined on the merits." *Id.* (emphasis added). I conclude that it was not.

In response to the application for a writ of mandamus in the Supreme Court, the Board filed a motion to dismiss which contained two grounds: first, that there is no clear legal duty imposed on the Board to allow write-in voting, nor any clear legal right of the applicant to the availability of such voting; and second, that issuance of the writ "at this time would be harmful to the interests of the public and third persons, in that preparations for the November election are virtually complete and votes have already been cast by absentee ballot."[2] The entire order of the Supreme Court granting the motion to dismiss is as follows:

> On October 4, 1984, came the applicant, by counsel, and filed an application in the above-styled case.
>
> Thereupon came the respondent, by counsel, and filed its brief and motion to dismiss the application, to which the applicant filed an opposition thereto. [Sic]
>
> On consideration whereof, the Court, for the reasons stated in the motion to dismiss, is of opinion that said motion is granted and the application for writ of mandamus is refused.
>
> It is therefore ordered that the respondent recover of the petitioner its costs by it expended about its defense herein.

The instant plaintiffs contend that the above order is not a definitive ruling on the constitutional issue presented. Instead, they claim that the Supreme Court denied the writ because of the nearness of the election

---

[2] The application for a writ of mandamus was filed on October 4, 1984, just 33 days prior to the subject general election.

only. In support of their position, plaintiffs cite *Klarfeld v. Salsbury*, 233 Va. 277, 355 S.E.2d 319 (1987), in which it is stated:

> Firmly established in the field of constitutional law is the doctrine that a court will not rule upon the constitutionality of a statute unless such a determination is absolutely necessary to the decision of the case on the merits. 233 Va. at 286.

Thus, according to plaintiffs, if the 1984 order of the Supreme Court was based on the nearness of the election, the constitutional question was not reached and the present action is not barred.

On the other hand, the Board asserts that the Supreme Court did not limit its holding to any specific aspect of the board's defenses. Indeed, the order does state that the writ is denied "for the reasons stated in the motion to dismiss." (Emphasis added.) Even if this contention by the Board is correct, however the present action would not be barred. This is so because if the 1984 order was predicated on the constitutional issue *and* the timeliness issue, the rationale for such order would not apply here since there now appears to be sufficient time for the Board to make provision for write-in voting in the 1988 election some eight months away. Or to put it another way, the 1984 order was necessarily based on one of the following:

1. The timeliness issue only;
2. The timeliness *and* constitutional issues; or
3. The constitutional issue only.

If the order was based on the first possibility above, res judicata would not apply because the constitutional question was not decided on the merits. If the order was based on the second possibility, as the board now suggests, res judicata would not apply because one of the factors present in that action, timeliness, is not present here. Only if the 1984 order was based on the third possibility will the present action be barred. As plaintiffs point out, however, in order for this court to conclude that the 1984 order was based on the constitutional issue only, this could would have to conclude that

the Supreme Court reached a decision on a significant constitutional issue without the benefit of oral argument and without the issuance of a reasoned opinion setting forth its analysis of the issues before it. In the words of the plaintiffs, "[i]t is simply unreasonable to conclude that, in a matter affecting the right to vote as guaranteed by the U. S. Constitution and involving the interpretation of the Virginia Constitution, as well as numerous provisions of the Code of Virginia, that the Supreme Court would act in such a cavalier fashion." Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss, etc., at 3-4. Accordingly, I hold that the present action is not barred by the October 29, 1984, order of the Supreme Court denying the Libertarian Party's application for a writ of mandamus.

2. *Demurrer*:

Notwithstanding the fact that the present action is not barred by res judicata, it must still be dismissed. This is true because even though Article II, § 3, of the Constitution of Virginia does seem to mandate provision for write-in voting in presidential elections, that provision is not self-executing. In *Newport News v. Woodward*, 104 Va. 58, 51 S.E. 193 (1905), the following rules were stated:

> It is well recognized in treatises on constitutional limitations and the decided cases that if the nature and extent of the right conferred by a constitutional provision is fixed by the provision itself, so that the same can be determined by the examination and construction of its own terms, and there is no language used indicating that the subject is referred to the Legislature for action, then the provision should be construed as self-executing. The question is one of intention in every case, and if it is apparent that no subsequent legislation is necessary to carry such provision into effect, then such provision is self-executing.

Says Cooley in his work on Constitutional Limitations, p. 121: "A constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be employed and protected, or the duty imposed may be enforced; and it is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law." 104 Va. at 61-62.[3]

And in *Robb v. Shockoe Slip Foundation*, 228 Va. 678, 324 S.E.2d 674 (1985), the Court stated:

A constitutional provision is self-executing when it expressly so declares. *See e.g.*, Va. Const. art. I, § 8. Even without benefit of such a declaration, constitutional provisions in bills of rights and those merely declaratory of common law are usually considered self-executing. The same is true of provisions which specifically prohibit particular conduct. 228 Va. at 681.

As was true with the particular constitutional provision being considered in *Robb*, Article II, § 3, of the Constitution of Virginia fails to meet the test of self-execution set out above. Article II, § 3, "contains no declaration of self-execution, it is not in the Bill of Rights, it is not declaratory of common law, and it lays down no rules by means of which the principles it posits may be given the force of law." *Id.* at 682. In fact, the very next section of the Virginia Constitution gives to the General Assembly the power to enact appropriate statutes to carry out the principles enumerated in Article II, § 3. The third paragraph if Article II, § 4, states:

[3] See also, School Board of Prince Edward County v. Griffin, 204 Va. 650, 133 S.E.2d 565 (1963): "[A] constitution may very clearly require county and town government; but if it fails to indicate its range, and to provide proper machinery, it is not in this particular self-executing, and legislation is essential." 204 Va. at 660.

The General Assembly shall provide for the nomination of candidates, shall regulate the time, place, manner conduct, and administration of primary, general, and special elections, and shall have power to make any other law regulating elections not inconsistent with this Constitution.

In spite of this provision, and in spite of the cases cited above, plaintiffs argue that Article II, Sect. 3, is self-executing. Plaintiffs' argument is based on its contention that "the language of Art. II, § 3, plainly and simply directs that 'provision shall be made' for write-in voting; the manner and means of its execution are not left to the judgment of the General Assembly nor does the provision merely state a broad public policy." Plaintiffs' Opposition to Defendant's Demurrer, at 14. As already stated, however, the manner and means of putting into effect the write-in voting provisions of Article II, as well as the other provisions of Article II, *are* left to the General Assembly in Article II, § 4. Moreover, an analysis of Virginia's election laws makes it clear that legislation is needed to bring about write-in voting in presidential elections.

Unlike candidates for other offices, candidates for President and Vice-President are not chosen directly by the electorate. Indeed, Article II, § 1, of the federal Constitution states, in pertinent part:

Each state shall appoint, *in such manner as the legislature thereof may direct*, a number of electors. . . . Emphasis added.

While Va. Code § 24.1-158 specifies the manner by which "political parties" are to choose and make known to the Board their electors, and § 24.1-159 specifies the manner by which "other groups" are to choose and

make known theirs,[4] nowhere in the Code is there any provision specifying the manner by which a write-in candidate is to choose his/her electors, or make them known to the Board. While plaintiffs' counsel suggests that plaintiffs and the Board can "work out" a procedure and timetable for submitting the names of the subject candidates' electors prior to the 1988 general election, it is the General Assembly, not the parties to this cause, upon which the Constitution has conferred such authority. Because the General Assembly has not exercised its authority in this regard, the Board is powerless to act, and this court cannot force it to do so. Accordingly, the Board's demurrer will be sustained. The other grounds of the Board's demurrer are specifically not addressed.

[4] "Other groups" refer to any group of qualified voters, equal in number to at least one-half of 1% of the number of voters registered in the Commonwealth as of January 1 of that year and including at least 200 qualified voters from each congressional district in the Commonwealth, not constituting a political party. See Section 24.1-159.