Present:  All the Justices

PATRICK R. GRAY, ET AL.

v.  Record No. 071220  OPINION BY JUSTICE CYNTHIA D. KINSER
                                        June 6, 2008
VIRGINIA SECRETARY OF
TRANSPORTATION, ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Margaret P. Spencer, Judge

This appeal involves a constitutional challenge to certain contractual agreements between the Commonwealth of Virginia and the Metropolitan Washington Airports Authority concerning the Dulles Toll Road.  The sole issue is whether the circuit court erred in sustaining demurrers and pleas in bar asserting sovereign immunity.  Because we conclude that certain constitutional provisions are self-executing and thus waive the Commonwealth's sovereign immunity, we will reverse in part the circuit court's judgment.

A. Standard of Review

" 'Where no evidence is taken in support of a plea in bar, the trial court, and the appellate court upon review, consider solely the pleadings in resolving the issue presented.' "  Niese v. City of Alexandria, 264 Va. 230, 233, 564 S.E.2d 127, 129 (2002) (quoting Lostrangio v. Laingford, 261 Va. 495, 497, 544 S.E.2d 357, 358 (2001)).  "The facts as stated in the pleadings by the plaintiff are

taken as true for the purpose of resolving the special plea." Id. (citing Lostrangio, 261 Va. at 497, 544 S.E.2d at 358). "The existence of sovereign immunity is a question of law that is reviewed de novo." City of Chesapeake v. Cunningham, 268 Va. 624, 633, 604 S.E.2d 420, 426 (2004).

B. The Parties[1]

The appellants, Patrick R. Gray and James W. Nagle, are both residents of Fairfax County and allege that they are frequent users of the Dulles Toll Road. The appellees include several entities and officials of the Commonwealth: the Commonwealth Transportation Board, the Virginia Department of Transportation (VDOT), the Virginia Secretary of Transportation, and the Virginia Commissioner of Transportation. For purposes of this opinion, we will refer to these appellees as "the Commonwealth Defendants."

The Metropolitan Washington Airports Authority (MWAA) is also an appellee. The MWAA is a regional public entity established by an interstate compact, which was approved by the United States Congress in 1986. See 49 U.S.C. § 49101 et seq. The General Assembly and the City Council of the

---

[1] Because the circuit court decided this case upon demurrers and special pleas in bar of sovereign immunity without an evidentiary hearing, we will recite the facts as alleged in the pleadings. McMillion v. Dryvit Systems, Inc., 262 Va. 463, 465, 552 S.E.2d 364, 365 (2001).

District of Columbia enacted legislation to establish the MWAA.  Code § 5.1-152 et seq.; D.C. Code § 9-901 et seq.  According to Code § 5.1-153, the MWAA is "a public body corporate and politic and independent of all other bodies," see also 42 U.S.C. § 49106(a)(2); D.C. Code § 9-902, created for the purpose of "acquiring, operating, maintaining, developing, promoting and protecting Ronald Reagan Washington National Airport and Washington Dulles International Airport."  Code § 5.1-156.

### C. Historical Background

On September 7, 1950, the United States Congress enacted legislation authorizing "the construction, protection, operation, and maintenance of a public airport in or in the vicinity of the District of Columbia."  Pub. L. 81-762, 64 Stat. 770.  Construction for the airport commenced in 1958, and the airport was dedicated on November 17, 1962, as Dulles International Airport.  In 1984, it was renamed Washington Dulles International Airport (Dulles Airport).  As part of the overall project, the Dulles Airport Access Highway (DAAH) was constructed to connect the airport to Interstate 495 (the Beltway) and Interstate 66. The entire road is limited to airport traffic only and has no exits west of the Beltway, other than direct access to the airport.  Due to public demand for local access routes

3

off of the DAAH, the United States Department of Transportation and the Director of the then existing Metropolitan Washington Airports entered into an agreement with the Commonwealth, dated July 6, 1981 ("the 1981 Agreement"), to construct a new road in the existing right-of-way for the DAAH. This new road, which has access for local traffic, is known as the Dulles Toll Road. VDOT constructed the Dulles Toll Road in the early 1980's and has maintained and operated the highway since it was opened to public use. By deed of easement dated January 9, 1990, the MWAA conveyed to the Commonwealth the right to use additional land within the DAAH right-of-way to widen the Dulles Toll Road.

On March 24, 2006, the Secretary of Transportation executed a Memorandum of Understanding (MOU) between the Commonwealth of Virginia and the MWAA concerning the Dulles Corridor Metrorail Project[2] (Metrorail Project) and the Dulles Toll Road. The MOU recites that the Dulles Toll Road was "constructed upon property owned by the federal government and leased to [the MWAA], pursuant to several deeds of easement to the Commonwealth of Virginia for the construction of the Dulles Toll Road." In the MOU, the

---

[2] The Metrorail Project is for the purpose of expanding the existing metrorail system to Dulles Airport.

4

parties agreed that the Commonwealth, acting through VDOT and the Commonwealth Transportation Board, "will transfer possession and control over the Dulles Toll Road right-of-way and all improvements thereto to the [MWAA]," that the MWAA will assume all operational, maintenance, toll-setting, toll-collection, debt, and financial responsibility for the Dulles Toll Road, and that the MWAA will construct certain phases of the Metrorail Project. Pursuant to the MOU, the Commonwealth agreed to transfer to the MWAA funds dedicated for the design and construction of the Metrorail Project and revenues collected from operation of the Dulles Toll Road. Finally, the MOU provides that "[r]evenues collected from the Dulles Toll Road shall be used for any and all costs related to the operation, maintenance and debt service of the Dulles Toll Road, and the design, construction and financing of the Dulles Corridor Metrorail Project."

On December 29, 2006, the VDOT and the MWAA entered into the first of several agreements contemplated by the MOU. Among other things, the agreement transferred to the MWAA the authority to set toll rates for the Dulles Toll Road.

### D. The Controversy

On January 11, 2007, Gray and Nagle (the Plaintiffs) filed a complaint against the Commonwealth Defendants and

the MWAA seeking declaratory and injunctive relief.  The Plaintiffs asserted that, without prior authorization from the General Assembly, the Commonwealth Defendants lacked the authority "to convey or transfer valuable Dulles Toll Road assets . . . to MWAA[; and] to delegate or assign to MWAA the responsibility and authority to direct and supervise the operation and maintenance of the Dulles Toll Road," and to "fix[] and collect[] tolls on the Dulles Toll Road."  The Plaintiffs further alleged that "[t]he contracting away, transfer, delegation or assignment . . . of taxing power to MWAA pursuant to the December 29, 2006, Agreement [was] an ultra vires act and violates the Constitution of Virginia." They asserted that the power to tax, or in this case, collect tolls, is vested in the General Assembly and that this power may only be delegated "to the governing bodies of counties, cities, towns and regional governments."  In support of their position, the Plaintiffs cited Article IV, Section 1 and Article VII, Sections 2, 3, and 7 of the Constitution of Virginia.  The Plaintiffs requested that the circuit court declare the MOU and the December 29, 2006 Agreement "illegal and invalid" and enjoin the implementation of both agreements.

The Commonwealth Defendants and the MWAA responded by filing demurrers and pleas in bar asserting, among other

6

things, that the plaintiffs' claims are barred by the doctrine of sovereign immunity and that the circuit court, therefore, lacked jurisdiction to hear the action. In their memorandum opposing the demurrers and pleas in bar, the Plaintiffs argued that their complaint alleged not only "violations of the separation of powers clauses of the Virginia Constitution (Article I, [Section] 5 and Article III, [Section] 1)" but also a violation of Article IV, Section 1 pertaining to the delegation of the General Assembly's taxing power. The Plaintiffs claimed that these provisions of the Virginia Constitution are self-executing and thus constitute a waiver of the Commonwealth's sovereign immunity.

The circuit court sustained the demurrers and pleas in bar and dismissed the complaint. In a letter opinion, which the circuit court incorporated into its final order, the court characterized the Plaintiffs' claims as being rooted in Article IV, Section 1, and Article VII, Sections 2, 3, and 7 of the Virginia Constitution. The circuit court also referenced "the separation of powers clauses of the Virginia Constitution" cited in the Plaintiffs' memorandum in opposition to the pleas in bar, i.e., Article I, Section 5 and Article III, Section 1. The circuit court concluded

that these provisions are not self-executing and thus do not constitute a waiver of sovereign immunity.[3]

On appeal to this Court, the Plaintiffs assert essentially the same argument as they presented in the circuit court. They contend that the "doctrine [of sovereign immunity] does not bar claims grounded in self-executing provisions of the Constitution." Contrary to the circuit court's holding, the Plaintiffs assert that Article I, Section 5, Article III, Section I, and Article IV, Section 1 of the Virginia Constitution are self-executing provisions and that their claims alleging violations of these constitutional provisions are therefore not barred by the doctrine of sovereign immunity.[4]

E. Analysis

---

[3] The circuit court also concluded that the doctrine of sovereign immunity applies to the MWAA. The court found that the MWAA should be treated like a municipality and was performing a governmental function for which it is immune. Alternatively, the court concluded that because the MWAA was in privity of contract with the Commonwealth under the December 29, 2006 Agreement, it shared in the Commonwealth's immunity. On appeal to this Court, the Plaintiffs do not assign error to these rulings; therefore, they will not be reviewed on appeal. Rule 5:17(c).

[4] The Plaintiffs do not discuss Article VII, Sections 2, 3, and 7. Thus, we will not consider those constitutional provisions in our analysis. See Rule 5:27; Elliott v. Commonwealth, 267 Va. 396, 422, 593 S.E.2d 270, 286 (2004) (failure to brief an assignment of error constitutes a waiver of the argument).

"[T]he doctrine of sovereign immunity is 'alive and well' in Virginia." Messina v. Burden, 228 Va. 301, 307, 321 S.E.2d 657, 660 (1984). "It is an established principle of sovereignty, in all civilized nations, that a sovereign State cannot be sued in its own courts . . . without its consent and permission." Board of Public Works v. Gannt, 76 Va. 455, 461 (1882). "One of the most often repeated explanations for the rule of state immunity from suits in tort is the necessity to protect the public purse." Messina, 228 Va. at 307, 321 S.E.2d at 660. "[W]hile maintenance of public funds is important, another equally important purpose of the rule is the orderly administration of government." Id. at 308, 321 S.E.2d at 660. Sovereign immunity is "a rule of social policy, which protects the state from burdensome interference with the performance of its governmental functions and preserves its control over state funds, property, and instrumentalities." Hinchey v. Ogden, 226 Va. 234, 240, 307 S.E.2d 891, 894 (1983). The doctrine also serves in "preventing citizens from improperly influencing the conduct of governmental affairs through the threat or use of vexatious litigation." Messina, 228 Va. at 308, 321 S.E.2d at 660; accord Afzall v. Commonwealth, 273 Va. 226, 231, 639 S.E.2d 279, 282 (2007).

Thus, "as a general rule, the sovereign is immune not only from actions at law for damages but also from suits in equity to restrain the government from acting or to compel it to act." Hinchey, 226 Va. at 239-40, 307 S.E.2d at 894 (citing Larson v. Domestic & Foreign Corp., 337 U.S. 682 (1949)). "Sovereign immunity may also bar a declaratory judgment proceeding against the Commonwealth." Afzall, 273 Va. at 231, 639 S.E.2d at 282. And because the Commonwealth can act only through individuals, the doctrine applies not only to the state, but also to certain government officials. Messina, 228 Va. at 308, 321 S.E.2d at 661. "[H]igh level governmental officials have generally been accorded absolute immunity." Id. at 309, 321 S.E.2d at 661, accord Alliance to Save the Mattaponi v. Commonwealth, 270 Va. 423, 455, 621 S.E.2d 78, 96 (2005).

The Commonwealth, however, can waive sovereign immunity and consent to being sued in its own courts. See, e.g., Rector & Visitors of the Univ. of Va. v. Carter, 267 Va. 242, 244, 591 S.E.2d 76, 78 (2004). "Only the General Assembly, acting in its capacity of making social policy, can abrogate the Commonwealth's sovereign immunity." Alliance, 270 Va. at 455, 621 S.E.2d at 96 (citing Commonwealth v. Luzik, 259 Va. 198, 206, 524 S.E.2d 871, 876 (2000)). "The Commonwealth and its agencies are immune from

liability . . . in the absence of an express constitutional or statutory waiver of sovereign immunity."  Billups v. Carter, 268 Va. 701, 707, 604 S.E.2d 414, 418 (2004).  "A waiver of sovereign immunity will not be implied from general statutory language but must be explicitly and expressly stated in the statute."  Alliance, 270 Va. at 455, 524 S.E.2d at 871 (citing Hinchey, 226 Va. at 241, 307 S.E.2d at 895).

The Plaintiffs acknowledged during oral argument before this Court that if the constitutional provisions upon which they rely, Article I, Section 5; Article III, Section 1; and Article IV, Section 1, are not self-executing, then their claims alleged in this action are barred by the doctrine of sovereign immunity.  Thus, the dispositive issue before us is whether these constitutional provisions are self-executing.[5]

---

[5]  The Plaintiffs' standing to bring this action was not challenged in the circuit court and thus is not a question before this Court.  See Martin v. Ziherl, 269 Va. 35, 39, 607 S.E.2d 367, 368 (2005) (failure to raise challenge to standing at trial level precludes this Court from considering the issue on appeal).  We reiterate, however, that "[t]he point of standing is to ensure that the person who asserts a position has a substantial legal right to do so and that his rights will be affected by the disposition of the case."  Cupp v. Board of Supervisors of Fairfax County, 227 Va. 580, 589, 318 S.E.2d 407, 411 (1984).  "Thus, it is not sufficient that the sole interest of [a] petitioner is to advance some perceived public right or to redress some anticipated public injury when the only wrong

11

We begin our analysis by examining the constitutional provisions at issue. Article I, Section 5 provides in relevant part: "That the legislative, executive, and judicial departments of the Commonwealth should be separate and distinct." Va. Const. art. I, § 5. Article III, Section 1 states in relevant part: "The legislative, executive, and judicial departments shall be separate and distinct, so that none exercise the powers properly belonging to the others, nor any person exercise the power of more than one of them at the same time." Va. Const. art. III, § 1. And, Article IV, Section 1 of the Constitution of Virginia provides, in its entirety: "The legislative power of the Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and House of Delegates." Va. Const. art. IV, § 1.

If a constitutional provision is self-executing, no further legislation is required to make it operative. Gill v. Nickels, 197 Va. 123, 129, 87 S.E.2d 806, 810 (1955); City of Newport News v. Woodward, 104 Va. 58, 60, 51 S.E. 193, 193 (1905); see also Black's Law Dictionary 1391 (8th ed. 2004) (defining the term "self-executing" as "effective

---

he has suffered is in common with other persons similarly situated. Virginia Beach Beautification Comm'n v. Board of Zoning Appeals, 231 Va. 415, 419, 344 S.E.2d 899, 902 (1986).

12

immediately without the need of any type of implementing action").  In Robb v. Shockoe Slip Foundation, 228 Va. 678, 324 S.E.2d 674 (1985), we explained how to determine whether a constitutional provision is self-executing:

> A constitutional provision is self-executing when it expressly so declares.  See, e.g., Va. Const. art. I, § 8.  Even without benefit of such a declaration, constitutional provisions in bills of rights and those merely declaratory of common law are usually considered self-executing.  The same is true of provisions which specifically prohibit particular conduct.  Provisions of a Constitution of a negative character are generally, if not universally, construed to be self-executing. . . .
>
> . . . .
>
> A constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be employed and protected, or the duty imposed may be enforced; and it is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law.

Id. at 681-82, 324 S.E.2d at 676 (citations and quotations omitted).

As the Plaintiffs point out, this Court has held in a long line of cases that the Virginia constitutional provision prohibiting the General Assembly from enacting any law whereby private property is taken or damaged for public uses without just compensation (currently found in Article I, Section 11) is self-executing and that a landowner may

13

enforce the constitutional right to just compensation in a common law action.  Kitchen v. City of Newport News, 275 Va. 378, 393, 657 S.E.2d 132, 140 (2008); Burns v. Board of Supervisors of Fairfax County, 218 Va. 625, 627, 238 S.E.2d 823, 825 (1977) (citing Heldt v. Elizabeth River Tunnel Dist., 196 Va. 477, 482, 84 S.E.2d 511, 515 (1954) and Swift & Co. v. City of Newport News, 105 Va. 108, 114-15, 52 S.E. 821, 824 (1906)).  As we explained, "such an action is not a tort action; rather, it is a contract action and, therefore, is not barred by the doctrine of sovereign immunity."  Bell Atlantic-Virginia, Inc. v. Arlington County, 254 Va. 60, 62, 486 S.E.2d 297, 298 (1997) (citing Jenkins v. County of Shenandoah, 246 Va. 467, 470, 436 S.E.2d 607, 609 (1993) and Burns, 218 Va. at 627, 238 S.E.2d at 825); see also Wiecking v. Allied Medical Supply Corp., 239 Va. 548, 553, 391 S.E.2d 258, 261 (1990) ("The sovereign is as liable for its contractual debts as any citizen would be, and that liability may be enforced by suit in the appropriate circuit court.").

In contrast, we held in Robb that Article XI, Section 1 of the Virginia Constitution is not self-executing.  228 Va. at 683, 324 S.E.2d at 677.  That constitutional provision states:

14

> § 1.  Natural resources and historical sites of the Commonwealth
>
> To the end that the people have clean air, pure water, and the use and enjoyment for recreation of adequate public lands, waters, and other natural resources, it shall be the policy of the Commonwealth to conserve, develop, and utilize its natural resources, its public lands, and its historical sites and buildings. Further, it shall be the Commonwealth's policy to protect its atmosphere, lands, and waters from pollution, impairment, or destruction, for the benefit, enjoyment, and general welfare of the people of the Commonwealth.

Va. Const. art. XI, § 1.  There, the plaintiff sought to enjoin the Governor of Virginia and the Virginia Department of General Services from demolishing certain state-owned buildings.  Id. at 680, 324 S.E.2d at 675.  In reaching the conclusion that Article XI, Section 1 is not self-executing, the Court pointed out that the provision's language "invites crucial questions of both substance and procedure," such as whether "the policy appl[ies] only to the State and to state-owned sites, or does it extend to private developers and to privately-owned sites[; w]ho has standing to enforce the policy[; and whether] the remedy [is] solely administrative, solely judicial, or a mixture of the two?"  Id. at 682, 324 S.E.2d at 676-77.  Because that constitutional provision is not self-executing, the Court reversed the decree of the trial court enjoining the defendants from taking certain

15

actions and dismissed the bill of complaint.  Id. at 683, 324 S.E.2d at 677.

None of the constitutional provisions at issue in this case invite such questions of substance and procedure. Article I, Section 5 and Article III, Section 1 are the separation of powers provisions cited by the Plaintiffs. Article I, Section 5 is contained in the Bill of Rights, and such constitutional provisions are generally considered to be self-executing.  Robb, 228 Va. at 681, 324 S.E.2d at 676. Furthermore, no additional legislation is needed to carry into effect the clear mandate contained in Article I, Section 5.  See Woodward, 104 Va. at 61, 51 S.E. at 194. Article III, Section 1, which provides that the "legislative, executive, and judicial departments shall be separate and distinct," not only reiterates the mandate found in Article 1, Section 5, but also expressly adds the prohibition "that none [of the departments can] exercise the powers properly belonging to the others, nor any person exercise the power of more than one of them at the same time."  Va. Const. art. III, § 1.  While Article III, Section 1 is not found in the Bill of Rights, it is of a negative character and specifically prohibits certain conduct.  See Robb, 228 Va. at 681-82, 324 S.E.2d at 676.

Thus, we conclude that Article I, Section 5 and Article III, Section 1 are self-executing.

Article IV, Section 1, unlike the previous provisions discussed, is neither contained in the Bill of Rights nor cast in a negative character.  However, it does provide a clear rule that the General Assembly, consisting of a House of Delegates and a Senate, shall be vested with the legislative power of the Commonwealth.  This constitutional provision needs no further legislation to make it operative.  Gill, 197 Va. at 129, 87 S.E.2d at 810.  It provides a sufficient rule by which the duty imposed may be enforced.  Robb, 228 Va. at 682, 324 S.E.2d at 676.  It would be an anomaly to say that a constitutional provision vesting the legislative power in the General Assembly is not self-executing and thus requires further legislation to make it operative.  Therefore, we also conclude that Article IV, Section 1 is self-executing.  See Marshall v. Northern Va. Transp. Auth., 275 Va. 419, 435-36, 657 S.E.2d 71, 80 (2008) (applying provisions of Article IV, Section 1).

"The characterization of a constitutional provision as 'self-executing' or not, is generally only a conclusion as to whether the constitutional intent is to provide a presently effective rule, by means of which the right given may be enjoyed and protected and the duties imposed may be enforced

17

without supplementary legislation." Jacobs v. City of Bunkie, 737 So.2d 14, 18 (La. 1999) (quoting Student Gov't Ass'n v. Board of Supervisors, 264 So.2d 916, 919 (La. 1972)). The fact that a self-executing constitutional provision is operative without the need for supplemental legislation means that the provision is enforceable in a common law action. Compare Kitchen, 275 Va. at 392, 657 S.E.2d at 140 (holding that a self-executing provision "permits a property owner to enforce his constitutional right to just compensation in a common law action"), with Robb, 228 Va. at 683, 324 S.E.2d at 677 (dismissing a bill of complaint because a constitutional provision was not self-executing). The constitutional provisions at issue in this case place duties and restrictions upon the Commonwealth itself and its departments. To give full force and effect to the provisions as self-executing, a person with standing must be able to enforce them through actions against the Commonwealth. Thus, we further hold that the self-executing constitutional provisions before us waive the Commonwealth's sovereign immunity.

## F. Conclusion

We hold that Article I, Section 5; Article III, Section 1; and Article IV, Section 1 are self-executing constitutional provisions and thereby waive the

18

Commonwealth's sovereign immunity.  Because the Plaintiffs do not challenge the circuit court's finding that the doctrine of sovereign immunity applies to the MWAA, our conclusion applies only to the Commonwealth Defendants. Thus, we will reverse the judgment of the circuit court with regard to the Commonwealth Defendants and remand this case for further proceedings.

<u>Affirmed in part</u>,
<u>reversed in part</u>,
<u>and remanded</u>.