COURT OF APPEALS OF VIRGINIA

Present:   Judges Raphael, Lorish and Frucci
Argued at Arlington, Virginia


WILLIAM CAPAROULA, ET AL.

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1137-24-4                     JUDGE LISA M. LORISH
                                                    SEPTEMBER 16, 2025

BOARD OF COUNTY SUPERVISORS OF
 PRINCE WILLIAM COUNTY, ET AL.


FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Carroll A. Weimer, Jr., Judge

Christopher T. Robertson (J. Chapman Petersen; Chap Petersen &
Associates, PLC, on briefs), for appellant.

Alan F. Smith, Chief Deputy Attorney (Michelle R. Robl, County
Attorney; Curt G. Spear, Deputy County Attorney, on brief), for
appellee Board of County Supervisors of Prince William County.

Matthew A. Westover (John H. Foote; Brooke N. West; Walsh
Colucci Lubeley & Walsh PC, on brief), for appellee Stanley
Martin Homes, LLC.


William Caparoula and several other neighbors (the "neighbors") challenge the Prince

William Board of County Supervisors' ("Board's") approval of Ordinance No. 23-52

("Ordinance"). The Ordinance rezoned approximately 270 acres (the "Property") to allow for the

development of data centers and amended the Data Center Opportunity Zone Overlay District to

include the Property within the Overlay District. The circuit court sustained the demurrers to the

neighbors' zoning challenge. Finding no error, we affirm the trial court's judgment.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND

Stanley Martin Homes, LLC ("Stanley") owns a 270-acre parcel of land, which was originally zoned for agricultural use but was later rezoned as a PMR (Planned Mixed Residential) zoning district. Stanley subsequently applied to rezone the Property from PMR to M-2 (Light Industrial). In response to Stanley's proposal, the Board held an initial public hearing on September 13, 2022, and another public hearing on February 7, 2023. The second public hearing lasted over 9 hours, and 88 citizens spoke; the overwhelming majority opposed the proposed rezoning. Citizens complained of noise, environmental impacts, and other downsides of the proposed rezoning. Their concerns caused the Board to defer consideration of Stanley's application to allow for more time to address "outstanding issues associated with the proposal."

At a third public hearing on November 28, 2023, the Board considered Stanley's amended proposed ordinance. Stanley's amended proposal included changes such as building an 85-acre public park and providing a $5 million contribution to the Board "to be used towards the development of the public park / recreation facilities." According to the legislative record, the proposal also promised millions of dollars in increased commercial tax revenue, job creation, economic development, and contributions to public services. The third hearing lasted 12 hours, where 76 citizens objected to the rezoning and 6 citizens spoke in support.

Toward the end of the third public hearing, Stanley removed the proposed public park and $5 million contribution from its application proffer. Despite these changes, the Board approved the rezoning application without remanding the revised application to the Planning Commission ("Commission"), an advisory board comprised of County residents appointed by the Board.

Pursuant to Code § 15.2-2285(F), neighbors filed a petition to overturn the Board's approval of the Ordinance. The Ordinance changed the Property's prior zoning category, which excluded data centers, to a new classification allowing data centers. The Property is allegedly near 3,759

homes. Neighbors contended that the Ordinance would increase the maximum permitted building height and allow data centers to "tower over the surrounding businesses and residences," which are "typically one or two stories." Neighbors argued that the Board's approval of the Ordinance was "arbitrary and capricious" and violated "procedural guarantees built into Virginia law and the ordinances of Prince William County."

Stanley then filed a motion craving oyer requesting that the legislative record be incorporated into neighbors' petition, which the court granted. Additionally, both the Board and Stanley filed demurrers to neighbors' petition, alleging primarily that the Board's approval of the rezoning was "fairly debatable"—the applicable legal standard for zoning decisions—and did not violate Virginia or Prince William County law. The Board's demurrer contained an additional challenge to standing, alleging that neighbors failed to identify a particularized harm.

The circuit court sustained the demurrers and dismissed neighbors' petition. The final order is "based on the pleadings (including the Legislative Record . . . pursuant to the Consent Order Granting Motion Craving Oyer dated January 26, 2024), memoranda, and arguments of counsel in court on June 6, 2024," and the "reasons stated on the record, which are incorporated [into the order] by reference."[1] Neighbors now appeal.

---

[1] The appellate record contains no hearing transcripts. (Order, Va. Ct. App. Oct. 8, 2024) (denying motion for extension of time). The circuit court sustained the demurrers alleging that neighbors lacked standing and failed to state a claim. We review these conclusions as determinations of law based only on the content of the pleadings themselves. Therefore, the transcripts in this case are not indispensable. This is true even though we do not know whether the circuit court sustained the demurrers because it concluded that the neighbors lacked standing, or because they failed to state a claim. If it was the former, we conclude that the neighbors had standing, and the "right result different reason" doctrine requires us to consider whether they pleaded sufficient claims. If it was the latter, we must still resolve the Board's contention that the neighbors lacked standing in the first place.

ANALYSIS

We review de novo a circuit court's decision to sustain a demurrer. *Friends of the Rappahannock v. Caroline Cnty. Bd. of Supervisors*, 286 Va. 38, 44 (2013). We likewise review de novo application of statutes and ordinances, where "the legislative act of a local government with respect to zoning is reviewed under a 'fairly debatable' standard." *Rowland v. Town Council of Warrenton*, 298 Va. 703, 710 (2020) (quoting *Renkey v. Cnty. Bd. of Arlington Cnty.*, 272 Va. 369, 373 (2006)).

I. The neighbors sufficiently alleged standing.

To begin with, Stanley challenges the neighbors' standing. "[T]he standing doctrine asks only whether the claimant truly has 'a personal stake in the outcome of the controversy.'" *Morgan v. Bd. of Supervisors*, 302 Va. 46, 59 (2023) ("*Morgan I*") (quoting *McClary v. Jenkins*, 299 Va. 216, 221-22 (2020)). "We review de novo the question of whether . . . factual allegations were sufficient to establish standing." *Anders Larsen Tr. v. Bd. of Supervisors*, 301 Va. 116, 122 (2022) (quoting *Platt v. Griffith*, 299 Va. 690, 692 (2021)).

"A two-part test determines whether nearby neighbors have standing to challenge a local governing body's land-use decision[.]" *Oak Valley Homeowners Ass'n v. Prince William Cnty. Bd. of Supervisors*, 85 Va. App. 382, 389 (2025).

> First, the complainant must own or occupy real property within or in close proximity to the property that is the subject of the land use determination, thus establishing that it has a direct, immediate, pecuniary, and substantial interest in the decision.
>
> Second, the complainant must allege facts demonstrating a particularized harm to some personal or property right, legal or equitable, or imposition of a burden or obligation upon the petitioner different from that suffered by the public generally.

*Morgan I*, 302 Va. at 59 (quoting *Anders Larsen Tr.*, 301 Va. at 121). Allegations "must be something more than an ingenious academic exercise in the conceivable." *Id.* at 61 (quoting *Warth v. Seldin*, 422 U.S. 490, 509 (1975)).

The neighbors pleaded sufficient facts to satisfy the proximity prong. The neighbors all alleged that they live across the road from, or directly adjacent to, the Property. Because they "own[ed] property next to or near the subject area, they meet the proximity requirement." *Oak Valley*, 85 Va. App. at 390*; see also Morgan I*, 302 Va. at 52 (sufficient proximity not only for neighbors who lived "directly across the street from the proposed development site" but also for those who lived 1,200 feet away); *Riverview Farm Assocs. Va. Gen. P'ship v. Bd. of Supervisors*, 259 Va. 419, 422, 427 (2000) (plaintiffs who lived up to 2,000 feet away from the land in question had "sufficiently close proximity").

The neighbors also successfully pleaded that they would experience "a particularized harm to some personal or property right, legal or equitable, or imposition of a burden or obligation . . . different from that suffered by the public generally." *Morgan I*, 302 Va. at 59 (quoting *Anders Larsen Tr.*, 301 Va. at 121). They alleged that they would be affected by "noise and energy usage, as well as [the] imposing size of the data centers, which [would] negatively impact their property values in addition to ruining the character of the neighborhood." The Board's staff report, attached to the petition, confirms that "[a]djacent property owners spoke in opposition at the Commission hearing, citing concerns about viewshed and noise," acknowledges that the project's "proximity to residential" areas is a weakness, suggests that "[c]onsideration should be given to viewshed from residential neighborhoods as well as providing noise

mitigation," and notes that the applicant had submitted revised proffers to address those concerns.[2]

The Board takes issue not with whether these allegations establish sufficient *harm*, but with whether the allegations are *particularized* to the neighbors rather than common to the public. But the fact that individuals who do not live right next to the proposed project may also take issue with noise from the project, or the impact on the landscape, does not transform the neighbors' concerns here into generalized public grievances. Someone living right next to a source of noise is harmed differently and particularly as compared to the harm someone might experience from driving past the noise sometimes.

To be sure, "the landowners would be required to prove their factual allegations at trial." *Oak Valley*, 85 Va. App. at 391; *see also Seymour v. Roanoke Cnty. Bd. of Supervisors*, 301 Va. 156, 166 n.3 (2022) ("A plaintiff can survive a demurrer with well-pleaded allegations of standing, but it cannot succeed thereafter without proof of standing."). For now, though, the neighbors have pleaded sufficient facts to make an initial show of standing.

II. The Board's demurrers were proper.

The neighbors first argue that the Board's and Stanley's demurrers were improper because they were merely "pleas of general issue." A plea of general issue is a "general denial of the plaintiff's whole declaration or an attack upon some fact the plaintiff would be required to prove in order to prevail on the merits." *Stockbridge v. Gemini Air Cargo, Inc.*, 269 Va. 609, 617-18 (2005). A "general denial of the entire complaint or plea of the general issue shall not be permitted," Rule 3:8(a), because "[i]t has long been required that a party raise specific defenses

---

[2] In reviewing a demurrer, a trial court may consider the "amended complaint and any attachments to that complaint." *TC MidAtlantic Dev., Inc. v. Commonwealth*, 280 Va. 204, 212 (2010).

(just as a plaintiff must give notice of claims) so that surprise and prejudice at trial from late revelation of unanticipated legal theories is avoided," *Howard v. Ball*, 289 Va. 470, 474 (2015).

Here, the demurrers properly asserted that "there is sufficient evidence in the Petition, including the exhibits, for the Court to determine as a matter of law that the Board's decision was fairly debatable" and that neighbors' petition failed to allege "sufficient facts that would support a claim that the approval of the Rezoning was arbitrary, capricious, and/or unreasonable." Neither demurrer generally denied neighbors' petition nor contested the facts asserted. Instead, the court acknowledged that neighbors' petition, including the legislative record, provided some evidence from which it could determine that the rezoning was fairly debatable. *See Byrne v. City of Alexandria*, 298 Va. 694, 701-02 (2020) (affirming circuit court's decision, based upon legislative record added to the pleadings, that the zoning issue was fairly debatable and, therefore, presumptively correct); *Eagle Harbor LLC v. Isle of Wight Cnty.*, 271 Va. 603, 619-20 (2006) (affirming trial court's decision to sustain demurrer, where the ordinance was fairly debatable). Thus, the demurrers were not pleas of general issue.[3]

> III. The circuit court did not err in concluding that the Board's decision complied with relevant statutes and ordinances.

"Legislative actions, such as the grant or denial of an application for rezoning, are presumed to be reasonable both upon review before the circuit court and upon appeal." *Hartley v. Bd. of Supervisors*, 80 Va. App. 1, 15 (2024). "Reasonableness, in turn, depends on whether 'the matter in

---

[3] We note that demurrers are frequently used to resolve dispositive issues in land use disputes. *See e.g.*, *Oak Valley*, 85 Va. App. at 399 (affirming order sustaining demurrer because landowners failed to state a claim that the Board erred by voting on the comprehensive-plan amendment without having listened to or considered public comment); *Rowland*, 298 Va. at 719 (affirming order sustaining demurrers because the residents' complaints raised no legal or factual issues sufficient to overcome the deference owed to the town council's zoning decisions); *EMAC, L.L.C. v. Cnty. of Hanover*, 291 Va. 13, 16 (2016) (affirming order sustaining demurrer because plaintiff failed to allege sufficient facts to show that the county's denial of its request for a conditional use permit extension was arbitrary, and therefore the Board's legislative decision was "fairly debatable" and entitled to deference).

issue is fairly debatable'—whether objective and reasonable people may logically arrive at different conclusions about the correct result." *Id.* (quoting *Bd. of Supervisors v. Robertson*, 266 Va. 525, 532 (2003)). The reasonableness standard is reviewed through a burden-shifting framework:

> Where presumptive reasonableness is challenged by probative evidence of unreasonableness, the challenge must be met by some evidence of reasonableness. If evidence of reasonableness is sufficient to make the question fairly debatable, the [legislative action] "must be sustained." If not, the evidence of unreasonableness defeats the presumption of reasonableness and the [legislative action] cannot be sustained.

*Bd. of Supervisors v. Snell Constr. Corp.*, 214 Va. 655, 659 (1974). "Under the fairly debatable standard, 'the question is whether there is *any evidence in the record sufficiently probative* to make a fairly debatable issue of the Board's decision.'" *Hartley*, 80 Va. App. at 15 (quoting *Town of Leesburg v. Giordano*, 280 Va. 597, 608 (2010)).

At the same time, "legislative action taken 'in violation of an existing ordinance' or other binding source of law is by definition arbitrary and capricious and may not be sustained by a court." *Id.* at 16 (quoting *Giordano*, 280 Va. at 621). We review questions of statutory interpretation de novo. *Id.*

The neighbors argue that the Board's rezoning decision violates prior ordinance and statutory requirements and that those zoning decisions were definitionally arbitrary and capricious. In other words, the neighbors advance a procedural challenge to whether the Board followed its own ordinances. The Board, on the other hand, argues that the neighbors made a substantive challenge to the discretion properly exercised by the Board, subject to the "fairly debatable" standard on appellate review. Under either framing, however, the neighbors' challenges fail.

A. The Board's actions were not arbitrary and capricious.

The neighbors allege that the rezoning decision violated several statutes, ordinances, and a provision of the Virginia Constitution. But even if these provisions apply and contain any

- 8 -

restrictions in the first place, the Board's zoning decisions comply with them.[4]  *See* Code § 15.2-2200 (identifying factors to consider and stating that zoning aims to "improve the public health, safety, convenience, and welfare of their citizens"); Code § 15.2-2284 (requiring "reasonable consideration for the existing use and character of the property"); Code § 15.2-2282 (requiring uniform application of zoning laws); Prince William County Code ("County Code") § 32-700.21 (setting standards for general development plan); County Code § 32-700.41 (requiring review by Commission); County Code § 32-700.42 (identifying considerations for Commission); Va. Const. art. XI, § 1 (establishing state public policy of environmental protection).  We apply a "presumption of validity" in determining whether a "local governing body adequately considered the standards set forth in the zoning ordinance."  *Newberry Station Homeowners Ass'n v. Bd. of Supervisors*, 285 Va. 604, 623 (2013).

The main challenge brought by the neighbors is to whether the Board violated County Code § 32-700.43(1)-(3).  According to the neighbors, the "combined effect" of these ordinances "is that any substantial changes to a proffer must be[] heard in a public hearing before the Planning Commission" and that "[t]his means that any substantial changes to the proffer be referred back to the Planning Commission for a public hearing if one has already taken place." The neighbors argue the Board violated this ordinance by making substantial changes to the proffer without referral back to the Commission.[5]

---

[4] This case does not involve an appeal of a Board of Zoning Appeals (BZA) decision on an administrative determination under Code § 15.2-2314.  Rather, neighbors' challenge is to a local governing body's legislative decision under Code § 15.2-2285(F).  *Cf. Lamar Co. v. City of Richmond*, 287 Va. 322, 326 (2014) (the fairly debatable standard of review did not apply to appeal of BZA decision denying a variance; rather the fairly debatable standard applies "when a governing body acts in a legislative capacity, such as when it adopts a zoning ordinance").

[5] By its terms, County Code § 32-700.43(3) applies only to changes made to an application *after* "notice of a public hearing" has been given.  Thus, in the case here, any changes made to Stanley's application between the initial public hearings and the first notice for the

But the relevant ordinances give the Board full discretion to "determine whether a change is substantial." County Code § 32-700.43(3). Under County Code § 32-700.43(3), if the Board finds a change to be insubstantial, it may decline to remand the revised rezoning application to the Commission. *Cf. Rowland*, 298 Va. at 719-20 (rejecting residents' argument that changes to the developer's application should have been referred back to the planning commission because revised application was "substantially the same" as the original and addressed commission's concerns); *Arogas, Inc. v. Frederick Cnty. Bd. of Zoning Appeals*, 280 Va. 221, 227-28 (2010) (rejecting petitioners' argument that the local board was required to hold an additional public hearing before voting on proffer that had been amended because changes did not materially alter application). The Supreme Court of Virginia has explained that to "find that every change resulting from continued negotiations between a developer and a locality requires an additional planning commission hearing would mean that 'the public hearing process may never come to a conclusion.'" *Rowland*, 298 Va. at 720 (citing *Arogas*, 280 Va. at 227).

The neighbors' challenge is, in substance, simply a challenge to the Board's exercise of its discretion in its decision-making. Because the standard of review for that matter is the "fairly debatable" standard, and the Board's decision satisfies that criteria, we find no error here. By a 5-3 vote, the Board chose *not* to remand the revised zoning application to the Commission. Underpinning that decision was the Board's determination that the revisions to the rezoning application were not substantial in the context of the overall project. Given the scope of the data center project, and millions of dollars' worth of public benefits noted above, we cannot say that the Board's decision was arbitrary and capricious. Instead, the Board properly exercised its

November 28, 2023 public hearing, issued on November 14, 2023, are irrelevant regardless of whether they were substantial.

statutory authority to determine that the change was *not* substantial, and its legislative decision deserves deference. County Code § 32-700.43(3); *Rowland*, 298 Va. at 721.

Similarly, the Board's decision did not violate County Code § 32-700.41(2), which provides that "[n]o *substantial* change shall be made in any proffered condition *after the public hearing* commences before the Board of County Supervisors, unless it is readvertised in accordance with the provisions of this chapter." (Emphases added). As discussed above, the Board determines what constitutes *substantial* change. County Code § 32-700.43(3). And at a minimum, it is fairly debatable whether the changes to the proffer at the November 28 public hearing were substantial in the context of the overall project. *See Rowland*, 298 Va. at 720-21 (affirming decision to sustain demurrer because determining "the sufficiency of the application" was a "legislative function" subject to the "fairly debatable" standard). As a result, we defer to the Board's decision.

Some of the remaining provisions upon which neighbors rely do not apply to the Board's decision at all. First, Article XI, § 1 of the Virginia Constitution is not self-executing and does not create a cause of action for neighbors. *Robb v. Shockoe Slip Foundation*, 228 Va. 678, 681-82 (1985). Second, Code § 15.2-2282—requiring that zoning regulations be "uniform for each class or kind of buildings and uses"—is inapplicable because neighbors have not alleged disparate treatment of those similarly situated. *See Schefer v. City Council of Falls Church*, 279 Va. 588, 594 (2010) (interpreting Code § 15.2-2282's uniformity requirement to permit different regulations within a zoning district so long as they apply equally to similarly situated properties). Third, County Code § 32-700.42(4) does not apply because it addresses circumstances where the Commission recommends that a property be rezoned to a "more intense, or higher, classification than that requested." There are no such circumstances here.

The neighbors' remaining statutory challenges are insufficient to overcome the presumption of validity. For example, Code § 15.2-2200, Code § 15.2-2283, and

- 11 -

Code § 15.2-2284 establish considerations for the Board to weigh in its decision making, but they do not otherwise constrain the Board's legislative discretion. Indeed, Code § 15.2-2200 simply states that Chapter 22 of Title 15.2 "is intended to encourage localities to improve public health, safety, convenience, and welfare of their citizens and to plan for the future development of communities." The Board must weigh the purposes of zoning ordinances identified in Code § 15.2-2283 with "reasonable consideration," but only "where applicable." Similarly, the Board weighs and gives "reasonable consideration" to the factors enumerated in Code § 15.2-2284. "The weighing of the relevant factors is a legislative function," and the "[f]ailure to consider the statutory factors on the record does not render a legislative decision arbitrary and capricious as a matter of law." *Hartley*, 80 Va. App. at 18-19. And "acceptance of proffers by a locality has the force of law" and is "the functional equivalent of an amendment to the zoning ordinance." *Rowland*, 298 Va. at 717. We will not second-guess the Board's legislative act where reasonable minds could differ.

B. The Board's actions were all fairly debatable.

In Virginia, once "a party challenging a rezoning decision presents evidence of its unreasonableness, the locality must present sufficient evidence to show the decision was 'fairly debatable' in order to have the decision upheld in court." *Id.* at 718. "Fairly debatable" means that evidence could "lead objective and reasonable persons to reach different conclusions." *Bd. of Supervisors v. McDonald's Corp.*, 261 Va. 583, 590 (2001) (quoting *Bd. of Supervisors v. Williams*, 216 Va. 49, 58 (1975)). The inquiry is whether there is "*any* evidence" in the record sufficiently probative to render the government action fairly debatable. *Robertson*, 266 Va. at 537 (quoting *Bd. of Supervisors v. Stickley*, 263 Va. 1, 11 (2002)). The required "any evidence" may be found in the petition, exhibits, or legislative record before the court. *See Byrne*, 298 Va. at 701-02 (sustaining demurrer based in part on legislative record); *EMAC, L.L.C. v. Cnty. of Hanover*, 291 Va. 13, 21

(2016) (holding that documents brought into a case through a motion craving oyer "may be used to 'amplif[y]' the facts alleged in a complaint when a court decides whether to sustain or overrule a demurrer" (quoting *Dodge v. Trustees of Randolph-Macon Woman's College*, 276 Va. 1, 5 (2008))).

The "fairly debatable" standard does not evaluate correctness because rezoning is a legislative decision. "We have long recognized that because the decision of a zoning authority is legislative in nature, a reviewing court should not be concerned with whether the decision was right or wrong." *Rowland*, 298 Va. at 718. Legislative decisions are presumed valid because "[z]oning is inescapably a political function" that warrants deference. *Sylvia Dev. Corp. v. Calvert Cnty.*, 48 F.3d 810, 828 (4th Cir. 1995); *Norton v. Bd. of Supervisors*, 299 Va. 749, 755 (2021); *Giordano*, 280 Va. at 606. The General Assembly empowered local governing bodies to weigh statutory factors and render legislative decisions. *See* Code §§ 15.2-2283, 15.2-2284; *see also* County Code §§ 32-700.01, 32-700.44.

Here, the Board's zoning action satisfies the "fairly debatable" standard because the evidence in the record permits "objective and reasonable persons to reach different conclusions" regarding its decision to approve the rezoning. *McDonald's*, 261 Va. at 590. In this case, after holding a public hearing, the Commission recommended approval. The Commission recommended the rezoning because the proposed data centers—a "targeted industry"—were projected to increase the commercial tax base, job creation, and economic development. Code § 15.2-2283(vii) (identifying encouragement of economic development as proper zoning purpose); County Code § 32-200.01(7) (same).

Stanley's zoning application contained evidence that the rezoning would yield numerous public benefits, including a $2.135 million contribution to the County's fire and rescue services

($.061/acre x 3.5 million square feet)[6]; a contribution of $75 per acre for water quality monitoring, drainage improvements, and/or stream restoration projects; an 18-foot-wide trail easement for pedestrian connectivity for parks and recreational uses; certain transportation improvements; an estimated contribution of $8,750,000 ($2.50 x 3.5 million square feet) for County transportation projects; significant economic development activity, including approximately $12 billion in total investment, about 350 permanent jobs, and hundreds of additional construction jobs; and a significant increase in net tax revenue, including over $9 million in the first year and over $71 million in year 15.

Because the record contains evidence of reasonableness, we may not substitute our judgment for the elected Board's legislative zoning decision. *See Eagle Harbor LLC*, 271 Va. at 620 (describing a legislative decision as fairly debatable where developers' reports provided evidence of both the reasonableness and unreasonableness of an increased fee); *Giordano*, 280 Va. at 608 (holding that testimony supporting the reasonableness of rates was sufficient to find the issue fairly debatable); *EMAC*, 291 Va. at 23 (affirming trial court sustaining demurrer where record contained some evidence that Board's decision was fairly debatable); *Newberry Station*, 285 Va. at 626 (affirming circuit court decision where there was some evidence of reasonableness in the record).

C.  The Board's decisions did not constitute illegal spot zoning.

The neighbors also argue that they stated a viable claim for illegal spot zoning, but we disagree.  Illegal spot zoning "occurs when the purpose of a zoning ordinance or rezoning amendment is solely to serve the private interests of one or more [neighbors], rather than to further a locality's welfare as part of an overall zoning plan that may include a concurrent benefit

---

[6] According to the legislative record, the proposed maximum floor area ratio ("FAR") for the data centers is no greater than "3.53 million square feet."  Calculations are based on 3.5 million square feet, for approximate numbers.

to private interests." *Riverview Farm*, 259 Va. at 429. Here, the legislative record contains clear evidence of public benefit such as job creation, tens of millions of dollars in additional tax revenue, a pedestrian trail easement, contributions to fire and rescue services, and contributions toward the county's environment. Thus, we do not find that the Board engaged in illegal spot zoning. *See id.* (rezoning was not illegal spot zoning because plaintiffs alleged a benefit to the county); *Bd. of Supervisors of Henrico Cnty. v. Fralin & Waldron, Inc.*, 222 Va. 218, 226 (1981) ("[I]f the legislative purpose is to further the welfare of the entire county . . . as part of an overall zoning plan, the ordinance does not constitute illegal spot zoning.").

CONCLUSION

For these reasons, the circuit court's judgment is affirmed.

*Affirmed.*