COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present: Judges O'Brien, AtLee and Senior Judge Petty
Argued by videoconference

MICHAEL W. MARTIN

v.      Record No. 1310-25-3

THE CITY OF WAYNESBORO,
 VIRGINIA, ET AL.

OPINION BY
JUDGE WILLIAM G. PETTY
MARCH 17, 2026

FROM THE CIRCUIT COURT OF THE CITY OF WAYNESBORO
Paul M. Peatross, Jr., Judge Designate

W. Barry Montgomery (KPM Law, on briefs), for appellant.

Richard H. Milnor (Zunka, Milnor & Carter, Ltd., on briefs), for
appellees.

Michael W. Martin challenges the circuit court's judgment dismissing his wrongful

termination claims against the City of Waynesboro and Michael D. Wilhelm. Martin asserts that

he was terminated from his job as a police captain in retaliation for reporting misconduct by

other local law enforcement officers. Martin brought claims against the City and Wilhelm under

Code § 2.2-3011 of the Fraud and Abuse Whistle Blower Protection Act (the "Whistle Blower

Act") (Code §§ 2.2-3009 to -3014), which protects individuals from retaliation for "report[ing]

instances of wrongdoing or abuse committed by governmental agencies." Code § 2.2-3009

(whistle blower claims). He also asserted claims against them under Code § 40.1-27.3, which

protects "employees" from retaliation for reporting wrongdoing or abuse committed by their

"employers," as those terms are defined in Code § 40.1-2 (retaliation claims).

The circuit court granted the City and Wilhelm's motion to dismiss Martin's whistle

blower claims for lack of subject matter jurisdiction because it found that they were entitled to

sovereign immunity. The court also granted Wilhelm's motion for summary judgment on the retaliation claim, finding that he was not Martin's "employer" under Code §§ 40.1-2 and 40.1-27.3. Martin assigns error to both rulings.

While ruling in favor of the City on the issue of sovereign immunity, the court overruled the City's demurrer to the whistle blower claim, and it denied a motion for summary judgment by the City and Wilhelm on the whistle blower claims based on their affirmative defense that Martin was terminated for misconduct rather than out of retaliation. The City and Wilhelm assign cross-error to these rulings.

We hold that the City is entitled to immunity from the whistle blower claim, but Wilhelm is not. And the record shows that there are issues of material fact genuinely in dispute barring summary judgment on the whistle blower claim against Wilhelm. We also hold that Wilhelm is not Martin's "employer" under Code § 40.1-2, so there is no error in the circuit court's summary judgment ruling on the retaliation claim. Thus, we affirm the circuit court's judgment in part and reverse in part.

BACKGROUND[1]

I. Martin's Whistle Blower Reports

Martin is a former captain of the Waynesboro Police Department (WPD). Wilhelm is a former WPD chief of police and was Martin's direct supervisor. Between 2016 and 2018, Martin worked on a drug task force composed of law enforcement officers from several adjacent jurisdictions, including Waynesboro and Augusta County. Martin and certain Augusta County officials had several disagreements over enforcement methods while working on the task force,

---

[1] On appeal of a summary judgment decision, we review the record applying the same standard the circuit court was required to adopt, "accepting as true those inferences from the facts that are most favorable to the nonmoving party, unless the inferences are forced, strained, or contrary to reason." *Stahl v. Stitt*, 301 Va. 1, 8 (2022) (quoting *Fultz v. Delhaize Am., Inc.*, 278 Va. 84, 88 (2009)).

which caused interpersonal tensions. Martin alleges that members of the Augusta County Sheriff's Office used improper tactics when serving drug-related warrants, curtailing successful drug seizures in the region. Given his concerns, on at least one occasion, Martin chose to work with a Virginia State Police (VSP) tactical team, rather than the Augusta County Sheriff's, in a drug search and seizure operation that spanned several jurisdictions, including Augusta County. Augusta County Sheriff Donald Smith was angered when he learned of his office's exclusion from the operation and thereafter demanded that all drug warrants in Augusta County be served solely through the Sheriff's Office.

In December 2017, Martin observed Augusta County Sheriff's Sergeant Mike Roane use what Martin alleges was excessive force in a vehicle stop. Martin also suspected that Roane had tracked the vehicle illegally. That same month, Martin witnessed Roane destroy several glass pipes belonging to a suspect during a consensual home search. Roane took one pipe and left it on his desk as a "trophy" for over a week. Martin expressed concerns about the traffic stop to Wilhelm and notified several officials of Roane's potential mishandling of evidence; those officials included Wilhelm, Waynesboro Commonwealth's Attorney David Ledbetter, and a member of the VSP.

After learning of Martin's report, Sheriff Smith asked Ledbetter not to place Roane on the "*Brady* list" for the relevant case, despite his misconduct.[2] Timothy A. Martin, the Commonwealth's Attorney for Augusta County, later commented to a Waynesboro Assistant Commonwealth's Attorney that he "couldn't believe that this guy [Martin] wanted to ruin a cop's career over a pipe." Martin expressed concerns to Wilhelm about these actions by Sheriff Smith and the Augusta Commonwealth's Attorney, as well as his continued concerns about Roane's

---

[2] This list presumably refers to the case of *Brady v. Maryland*, 373 U.S. 83 (1963), in which the United States Supreme Court held that prosecutors must disclose to the defense any exculpatory evidence in their possession. *See Commonwealth v. Tuma*, 285 Va. 629, 634-37 (2013). The required disclosures under *Brady* include evidence that could be used to impeach a witness. *Id.* at 634.

misconduct.  In response, Wilhelm told Martin that he "just needed to 'quit pissing people off.'" Wilhelm and the City of Waynesboro did not investigate Martin's reports of misconduct.  Despite Wilhelm's warning, Martin then reported Sheriff Smith's and Roane's asserted misconduct to the VSP.[3]

A few weeks later, Sheriff Smith called a special meeting of the drug task force and successfully lobbied to have Martin voted off the task force and to move the task force's operational center from Waynesboro to Augusta County.  Martin continued to work on regional drug cases in his role as a Waynesboro police officer, as well as in coordination with the federal Drug Enforcement Administration (DEA) as a federal "task force officer."  In late 2018, Sheriff Smith contacted the Washington Field Office of the DEA and "successfully had Martin's federal credentials pulled as a result of false information."

## II.  Martin's Termination

In October 2018, Martin and other law enforcement officers recovered almost a kilogram of methamphetamine after a confidential informant told Martin where the drugs were located.  The informant divulged the location after Martin promised him that he would not be prosecuted.  The informant was released, and he worked with Martin for the next several months providing helpful information that supported additional arrests and drug seizures.

Despite the Augusta Commonwealth Attorney's knowledge that Martin had promised the informant immunity, he initiated a criminal case against the confidential informant, resulting in a July 2019 indictment of the informant for possession of methamphetamine, in violation of Code § 18.2-248(H).  The informant moved to suppress his confession to the police as non-voluntary because it was made in exchange for the promise of immunity.

---

[3] Martin met with members of the VSP to discuss Sheriff Smith's and Roane's conduct, but the complaint does not state whether the VSP investigated the allegations.

At a hearing on the suppression motion, Martin testified that he had promised the informant that he would not be prosecuted if he surrendered the drugs and cooperated with law enforcement officers. Martin admitted that he lacked authority to make a deal with the informant without approval from a prosecuting authority, but he stated that he believed that the case involved unusual, urgent circumstances allowing him to make the promise.[4] He added that he believed that prosecutors would agree and honor the deal. According to Martin, he believed that the Augusta Commonwealth Attorney's office had agreed not to charge the informant. In support of this belief, Martin testified that he "hadn't even sent the drugs to the lab" for testing when he spoke to the Augusta Commonwealth's Attorney about the informant in February 2019. He admitted that he had not included the immunity promise in a police report that he had prepared about the drug seizure. He explained the omission was deliberate and done in the ordinary course of business to protect confidential informants.

Another law enforcement officer who was present at the interview with the informant testified that he did not recall Martin making any promise of immunity. The Augusta Commonwealth's Attorney moved to dismiss the case before the court ruled on the motion. After the hearing, the Augusta Commonwealth's Attorney told Wilhelm that Martin had provided false testimony at the hearing. Wilhelm placed Martin on administrative leave and asked the VSP to investigate the allegations.

The VSP provided the results of its investigation to Special Prosecutor Jeffrey Einhaus, who declined to prosecute Martin for perjury. In an April 2021 letter, Einhaus concluded that Martin's

---

[4] A transcript from the suppression hearing was attached as an exhibit to the City and Wilhelm's summary judgment motion. During the hearing, the Augusta Commonwealth's Attorney implied that he was unaware of Martin's promise. Viewing the facts alleged in the light most favorable to Martin strictly for purposes of reviewing the summary judgment motion, we accept that the Augusta Commonwealth's Attorney knew of the non-prosecution deal Martin had made. *See Stahl*, 301 Va. at 8.

testimony that he had made the immunity promise conflicted with another law enforcement officer's testimony at the same hearing, and his own police report (by deliberate omission), but VSP investigators had not uncovered sufficient additional evidence to prove that Martin's claim was false. Einhaus also concluded that Martin gave demonstrably inaccurate testimony by stating that he had not sent the drugs to the lab when he discussed the matter with the Augusta Commonwealth's Attorney in February 2019, because records showed that he had requested lab analysis of the drugs in October 2018. Even so, Einhaus noted that the investigation produced no evidence that Martin "willfully" lied about that fact.

In July 2021, Ledbetter wrote to Wilhelm stating that the Office of the Commonwealth's Attorney for the City of Waynesboro would no longer prosecute any case for which Martin would be a material witness. His decision was based on the findings in Einhaus's April 5, 2021 letter; conflicting statements Martin had made to Ledbetter and Wilhelm about his role in a police operation while on administrative leave; and considerations arising from *Brady v. Maryland*, 373 U.S. 83 (1963).

Wilhelm initiated an internal investigation to determine whether Martin had violated WPD policies. Major Sean Reeves of the Albemarle County Police Department conducted the investigation. In a September 2021 report, Reeves concluded that Martin had violated Waynesboro Police Department General Order (WPD GO) 20.02 by entering a non-prosecution deal with a confidential informant without consulting a prosecuting authority. Reeves also determined that Martin had conducted police work while on administrative leave, had told Ledbetter about that work, and had then lied to Wilhelm about having conducted the work. Finally, Reeves found that Martin continued to conduct police work while on administrative leave in violation of a direct order by Wilhelm not to do so. These actions, according to Reeves, violated WPD GO 5.01 governing standards of conduct.

Wilhelm terminated Martin in January 2022 based on the results of the internal investigation. In a letter explaining the decision, Wilhelm made five findings: (1) Martin improperly promised not to charge a confidential informant in exchange for information related to a drug investigation, in violation of WPD GO 20.02; (2) Martin made contradictory statements to Ledbetter and Wilhelm about his involvement in police work while on administrative leave, in violation of WPD GO 5.01; (3) Martin committed insubordination, in violation of WPD GO 5.01; (4) Martin provided false testimony under oath at the confidential informant's suppression hearing, in violation of WPD GO 5.01; and (5) Martin omitted exculpatory evidence (the promise he made to the confidential informant) from a police report, in violation of WPD GO 5.01. Wilhelm also noted that Ledbetter's decision not to prosecute cases for which Martin would be a material witness had "rendered [Martin] unable to perform [his] duties as a Waynesboro Police Officer." Martin initiated a grievance under the City of Waynesboro's grievance procedure, and a grievance panel affirmed all five findings from Wilhelm's termination letter without explanation.

III. Procedural History

Martin brought claims against Wilhelm and the City for wrongful termination under Code § 2.2-3011 (the "whistle blower claims") and Code § 40.1-27.3 (the "retaliation claims"), as well as a common law wrongful termination claim. He sought compensatory and punitive damages, attorney fees, and an order directing the City to reinstate his employment. The City and Wilhelm demurred. The circuit court sustained with prejudice the City's demurrer to Martin's retaliation claim, the common law wrongful discharge claim, and Martin's request for punitive damages. The court overruled the City's demurrer to the whistle blower claim. The court sustained with prejudice Wilhelm's demurrer to the common law wrongful discharge claim but overruled his demurrer to the

whistle blower claim and retaliation claim. The court took Wilhelm's demurrer to Martin's request for punitive damages under advisement.

The City and Wilhelm then moved to dismiss the whistle blower claims for lack of subject matter jurisdiction, asserting that they were entitled to sovereign immunity. The circuit court granted the motions, concluding that the defendants were entitled to sovereign immunity and that the Whistle Blower Act did not expressly waive their immunity.

The City and Wilhelm also moved for summary judgment on the whistle blower claims, arguing that they were entitled to terminate Martin because he committed misconduct. At the parties' request, the court heard argument on this motion despite having already found that the defendants were entitled to sovereign immunity. The court denied the motion.

Wilhelm moved for summary judgment on the retaliation claim, arguing that he was not Martin's "employer" under Code § 40.1-27.3. The court agreed and granted Wilhelm summary judgment on that claim.

On appeal, Martin asserts that the circuit court erred by concluding that the Whistle Blower Act does not waive the City's and Wilhelm's immunity. Martin also asserts that the circuit court erred by concluding that Wilhelm was not his "employer" under Code § 40.1-27.3. The City assigns cross-error to the circuit court's overruling its demurrer to the whistle blower claim, asserting that the City is not an "employer" under the Whistle Blower Act. The City and Wilhelm also argue that the court should have granted their motions for summary judgment on the whistle blower claims because the undisputed facts demonstrate that they terminated Martin for misconduct, which is a defense to the claims.

ANALYSIS

I.  Whistle Blower Claims

A.  Sovereign Immunity

"It is an established principle of sovereignty, in all civilized nations, that a sovereign State cannot be sued in its own courts . . . without its consent and permission." *Gray v. Va. Sec'y of Transp.*, 276 Va. 93, 101 (2008) (alteration in original) (quoting *Bd. of Pub. Works v. Gannt*, 76 Va. 455, 461 (1882)).  "Thus, 'as a general rule, the sovereign is immune not only from actions at law for damages but also from suits in equity to restrain the government from acting or to compel it to act.'"  *Id.* at 102 (quoting *Hinchey v. Ogden*, 226 Va. 234, 239 (1983)).  "The existence of sovereign immunity is a question of law that is reviewed de novo." *Ellis v. Jolley*, ___ Va. ___, ___ (Dec. 11, 2025) (quoting *Lee v. City of Norfolk*, 281 Va. 423, 439 (2011)).

Municipalities are entitled to sovereign immunity to the extent they exercise governmental powers delegated to them by the Commonwealth.  *See Va. Elec. & Power Co. v. Hampton Redevelopment & Hous. Auth.*, 217 Va. 30, 34 (1976); *Hoggard v. Richmond*, 172 Va. 145, 147-48 (1939).  "'And because the Commonwealth can act only through individuals,' the doctrine of sovereign immunity 'applies not only to the state, but also to certain government officials.'" *Ibanez v. Albemarle Cnty. Sch. Bd.*, 80 Va. App. 169, 189 (2024) (quoting *Gray*, 276 Va. at 101).

"The Commonwealth, however, can waive sovereign immunity and consent to being sued in its own courts."  *Gray*, 276 Va. at 102.  Waiver occurs in two instances: (1) "where statutory language 'explicitly and expressly,' allows a private right of action," and (2) "where a constitutional provision is 'self-executing.'"  *Ibanez*, 80 Va. App. at 190 (quoting *Gray*, 276 Va.

- 9 -

at 102). The question before us is whether the Whistle Blower Act expressly waives the City's and Wilhelm's immunity.[5]

A statutory waiver of sovereign immunity occurs "only when the statutory language has explicitly and expressly announced such a waiver." *Ligon v. County of Goochland*, 279 Va. 312, 317 (2010). "[A] waiver of sovereign immunity cannot be implied from general statutory language." *Id.* at 319. The express announcement of a waiver of immunity, however, need not include the specific terms "waive" or "immunity." Instead, the analysis turns on whether the statute expressly provides a procedural mechanism by which the Commonwealth or one of its agents may be held monetarily liable, restrained, or compelled to act. For example, the Supreme Court consistently has held that the Virginia Tort Claims Act (VTCA), Code §§ 8.01-195.1 to -195.9, provides "an express, limited waiver of the Commonwealth's immunity from tort claims." *Baumgardner v. Sw. Va. Mental Health Inst.*, 247 Va. 486, 489 (1994); *see also Rector & Visitors of the Univ. of Va. v. Carter*, 267 Va. 242, 244 (2004). The waiver applies because Code § 8.01-195.3 provides that the Commonwealth and certain transportation districts "shall be liable for claims for money" arising from tort claims in certain circumstances.[6]

---

[5] Martin does not dispute that the City and Wilhelm are entitled to sovereign immunity as a threshold matter; he argues only that the Whistle Blower Act waives their immunity. Issues of law are not subject to concession binding on this Court. *Va. Marine Res. Comm'n v. Chincoteague Inn*, 287 Va. 371, 389 (2014). We agree, however, that Wilhelm's act of terminating Martin's employment was one for which he and the City would otherwise be entitled to immunity if not waived by statute. Municipalities and government officials are generally entitled to immunity in the exercise of discretionary, governmental functions, but not for ministerial, proprietary functions. *See Ellis*, ___ Va. at ___ (applying "four-factor test to determine whether a governmental employee shares in the immunity enjoyed by the sovereign"); *Cromartie v. Billings*, 298 Va. 284, 297-98 (2020); *Massenburg v. City of Petersburg*, 298 Va. 212, 217-21 (2019).

[6] Code § 8.01-195.3 does explicitly mention and preserve the immunity of certain government officials, as well as counties, cities, and towns.

- 10 -

Similarly, the Supreme Court has held that "Code § 62.1-44.29 is an express waiver of the Commonwealth's immunity from judicial review of final decisions of the Water Control Board issuing or denying water protection permits" because it "expressly provides for judicial review of all final decisions of the Water Control Board relating to the issuance of water protection permits." *All. to Save the Mattaponi v. Commonwealth Dep't of Env't Quality ex rel. State Water Control Bd.*, 270 Va. 423, 440-41 (2005). Thus, whether a statute expressly waives sovereign immunity turns on whether the statute expressly makes the Commonwealth or its agents subject to a procedural remedy. *See id.*; *see also Commonwealth ex rel. Fair Hous. Bd. v. Windsor Plaza Condo. Ass'n*, 289 Va. 34, 57 (2014) (noting that Code § 36-96.17(E)(3) waives sovereign immunity because it expressly states that in a civil action brought by the Commonwealth based on discriminatory housing practices the prevailing party can recover attorney fees and "[t]he Commonwealth shall be liable for such fees and costs to the extent provided by the Code of Virginia"); *Afzall v. Commonwealth*, 273 Va. 226, 233-34 (2007) (noting that the final paragraph of Code § 8.01-66.9 evinced an intent to waive sovereign immunity by providing "a particular procedure for an injured person to follow in seeking judicial review"); *Va. Bd. of Med. v. Va. Physical Therapy Ass'n*, 13 Va. App. 458, 465-66 (1991) (holding that the Virginia Administrative Procedure Act constitutes an express waiver of agencies' sovereign immunity because it allows for judicial review of agency actions).

As relevant here, Code § 2.2-3011 provides that "any whistle blower may bring a civil action" against his "employer" for wrongful discharge and retaliation. A "whistle blower" is "an employee" who witnesses or has evidence of wrongdoing and plans to report it. Code § 2.2-3010. An "employee" includes a person employed by a government agency. *Id.* A "government agency" includes state government agencies and "any county, city, or town or local or regional governmental authority." *Id.* And an "employer" is an employee's supervisor within

that agency. *Id.* Thus, the Whistle Blower Act expressly creates a private right of action by a city police officer against his supervisor, and it expressly waives the supervisor's sovereign immunity for such claims. *See, e.g.*, *Frederick County v. Va. Dep't of the Treasury*, 81 Va. App. 102, 108-16 (2024) (concluding that Code § 58.1-3952 waived the Commonwealth's sovereign immunity for actions to enforce tax liens where the statute allowed actions against any indebted "person" and explicitly defined "person" to include "the Commonwealth and its agencies"). With this understanding in mind, we hold that Wilhelm is not entitled to sovereign immunity from Martin's whistle blower claim. Thus, the circuit court erred by granting Wilhelm's motion to dismiss on that basis.[7]

---

[7] Wilhelm's focus on the lack of an explicit reference to sovereign immunity in the Whistle Blower Act is understandable, given the repeated admonition by Virginia courts that waiver of sovereign immunity "cannot be implied from general statutory language but must be explicitly and expressly announced in the statute." *Windsor Plaza Condo. Ass'n*, 289 Va. at 56 (quoting *Afzall*, 273 Va. at 230). Yet, as demonstrated by the caselaw, see *supra*, that statement appears to constitute an oft-repeated but legally misleading "rhetorical flourish," or "inadequate catch words" of the sort recently referenced by the Supreme Court of Virginia. *Mast v. A.A.*, ___ Va. ___, ___ (Feb. 12, 2026) (first quoting *Bonanno v. Quinn*, 299 Va. 722, 736 (2021); and then quoting Oliver Wendell Holmes, *Law in Science and Science in Law*, 12 Harv. L. Rev. 443, 455 (1899)). Although some statutes waive immunity by explicitly referencing it, oftentimes what statutes do is expressly create an action or procedural remedy against a government entity or its agents without referencing immunity at all. *Compare Newport News Sch. Bd. v. Z.M.*, 304 Va. 276, 280 (2025) (analyzing waiver of immunity under Code § 22.1-194, which provides that "the defense of governmental immunity shall not be a bar" to certain claims arising from accidents involving vehicles owned or operated by school boards or localities), *with Windsor Plaza Condo. Ass'n*, 289 Va. at 57-58 (stating that Code § 36-96.17, which does not reference "immunity," contains an "explicit waiver of sovereign immunity"). In those latter cases, courts opine that the statutes have waived immunity "expressly," but the process might be more accurately characterized as waiver by undeniable logical implication. A statute that creates a cause of action against the Commonwealth *must* also waive the Commonwealth's immunity, or the statute itself would be pointless. In a sense, then, we often find sovereign immunity by implication, despite declaring that we never will. The more appropriate question is whether a waiver of sovereign immunity must logically follow because the enforceability of the cause of action created by the statute plainly depends on immunity having been waived. As explained in this opinion, we find that the clearer guideline for determining whether the General Assembly intended a statute to waive sovereign immunity is whether the statute enacted clearly provides a cause of action against a defendant who would otherwise be entitled to that immunity.

But the Act does not waive the City's sovereign immunity. Code § 2.2-3010 separately defines the terms "employer" and "governmental agency." An "employer" is an individual person who supervises an "employee," whereas a "governmental agency" is an entity for which employees and employers work. Code § 2.2-3010. Code § 2.2-3011 creates a civil action only "for violation of *this section*," and prohibits only an "employer" from retaliating against an employee for whistleblowing. *Id.* (emphasis added). The statute does not provide for claims against governmental agencies. By contrast, Code § 2.2-3010.1 prohibits any "governmental agency" from retaliating against a citizen. "[W]hen the General Assembly has used specific language in one instance, but omits that language or uses different language when addressing a similar subject elsewhere in the Code, we must presume that the difference in the choice of language was intentional." *Windsor Plaza Condo. Ass'n*, 289 Va. at 57 (alteration in original) (quoting *Newberry Station Homeowners Ass'n v. Bd. of Supervisors*, 285 Va. 604, 616 (2013)). Thus, Code § 2.2-3011 creates a civil right of action against individual supervisors, not against governmental agencies, and it waives the sovereign immunity of only the supervisors, not the agencies. *Id.* The circuit court correctly granted the City's motion to dismiss based on its sovereign immunity to the whistle blower claim.[8]

## B. Summary Judgment

"[S]ummary judgment shall not be entered unless no material fact is genuinely in dispute . . . and the moving party is entitled to such judgment as a matter of law." *Oreze Healthcare LLC v. E. Shore Cmty. Servs. Bd.*, 302 Va. 225, 230 (2023) (first alteration in original) (quoting *La Bella Dona Skin Care, Inc. v. Belle Femme Enters., LLC*, 294 Va. 243, 253 (2017)); *see* Rule 3:20. "Thus, if the evidence is conflicting on a material point or if reasonable persons may draw different

---

[8] Given our disposition resolving Martin's whistle blower claim against the City in the City's favor, the City's assignments of cross-error to the judgments on its demurrer and motion for summary judgment are moot.

conclusions from the evidence, summary judgment is not appropriate." *Fultz v. Delhaize Am., Inc.*, 278 Va. 84, 88 (2009). A genuine dispute of material fact can arise "not only from the facts asserted but also from the reasonable inferences arising from those facts." *AlBritton v. Commonwealth*, 299 Va. 392, 403 (2021) (citation omitted) (quoting *Fultz*, 278 Va. at 88). "[T]he trial court's determination that no genuinely disputed material facts exist and its application of law to the facts present issues of law subject to de novo review.'" *Oreze Healthcare LLC*, 302 Va. at 230 (quoting *La Bella Dona Skin Care, Inc.*, 294 Va. at 253).

"Nothing in [the Whistle Blower Act] shall prohibit an employer from disciplining or discharging a whistle blower for his misconduct or any violation of criminal law." Code § 2.2-3011(E). Wilhelm raised Code § 2.2-3011(E) as an affirmative defense in his motion for summary judgment, asserting that he terminated Martin for misconduct rather than out of retaliation. "A party seeking summary judgment on an affirmative defense must demonstrate that no reasonable factfinder governed by the applicable legal standard could *reject* the asserted defense on the merits." *AlBritton*, 299 Va. at 404.

A grant of summary judgment must be based upon undisputed facts established by "the pleadings, the orders . . . made at a pretrial conference, [or] the admissions . . . in the proceedings." Rule 3:20; *see Corriveau v. State Farm Mut. Auto. Ins. Co.*, 298 Va. 273, 278 (2019). Wilhelm relies heavily on exhibits to his summary judgment motion to support his affirmative defense. The documents include, among other things, a transcript of the suppression hearing, Einhaus's April 2021 letter, Ledbetter's July 2021 letter, Reeves's September 2021 report, and Wilhelm's January 2022 termination letter. But while Martin admitted the *authenticity* of those documents in discovery, he generally disputes their contents and the allegations that he violated any WPD policies. Moreover, Martin disputes that Wilhelm terminated him based on the alleged policy violations, rather than in retaliation for his whistle blower complaints.

The allegations in the complaint paint a complicated picture of interpersonal tensions and shifting power dynamics between numerous individuals across jurisdictions. On at least one occasion, Wilhelm directly rejected Martin's attempts to report Sheriff Smith's and Roane's actions and told him that rather than reporting the alleged misconduct, he should "quit pissing people off." Viewing the facts in the light most favorable to Martin, reasonable factfinders could draw different conclusions about whether Wilhelm terminated Martin in retaliation for his reports of misconduct, rather than for violating WPD policy. Granting summary judgment based on this record would impermissibly "short-circuit litigation by deciding disputed facts without permitting the parties to reach a trial on the merits." *Stockbridge v. Gemini Air Cargo, Inc.*, 269 Va. 609, 618 (2005). Thus, the circuit court correctly denied Wilhelm's motion.

## II. Retaliation Claim

Code § 40.1-27.3 prohibits employers from taking retaliatory action for whistle blowing and creates a civil cause of action for employees to remedy violations of that section. For purposes of Martin's retaliation claim, an "employer" is "an individual, partnership, association, corporation, legal representative, receiver, trustee, or trustee in bankruptcy doing business in or operating within this Commonwealth who employs another to work for wages, salaries, or on commission" as well as "any similar entity acting directly or indirectly in the interest of an employer in relation to an employee." Code § 40.1-2; *see Harris v. Washington & Lee Univ.*, 82 Va. App. 175, 196 (2024); *Cornell v. Benedict*, 301 Va. 342, 348-51 (2022).

It is undisputed that Wilhelm does not pay Martin's wages, so he is not his "employer" under the basic definition of the word in Code § 40.1-2. *See* Code § 40.1-2; *Cornell*, 301 Va. at 348-51; *Harris*, 82 Va. App. at 196. Nor is Wilhelm "any similar entity acting directly or indirectly in the interest of an employer in relation to an employee." Code § 40.1-2. In *Cornell*, the Supreme Court concluded that the "any similar entity" clause did not include individual supervisors.

- 15 -

301 Va. at 348-51 (addressing claims for unpaid wages under Code § 40.1-29(J)). The definition of "employer" used in the federal Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 to 219, which is similar to but predates Code § 40.1-2, includes "*any person* acting directly or indirectly in the interest of an employer." *Cornell*, 301 Va. at 350 (quoting 29 U.S.C. § 203(d) (emphasis added)). The Court found that, by using the word "entity," the General Assembly intended to adopt a more limited definition of the term "employer" than the one used in FLSA. *Id.* at 349-51; *see id.* (holding that plaintiffs could not sue individual board members for joint employer liability along with the company). By the same reasoning, Martin cannot bring a retaliation claim under Code § 40.1-27.3 against an individual supervisor rather than the entity that employed him. *See id.*; *see also Harris*, 82 Va. App. at 196-97 (holding that for an entity to qualify as an "employer" under the "any similar entity" clause of Code § 40.1-2, it must meet the same requirements applicable to "employers" generally).

Wilhelm is an individual supervisor who did not pay Martin's wages. He was not Martin's "employer" under either the definition in Code § 40.1-2 or the "any similar entity" clause. Thus, the circuit court correctly granted Wilhelm's motion for summary judgment on the retaliation claim.

CONCLUSION

The Whistle Blower Act waives sovereign immunity for individual supervisors but not for government agencies for claims under Code § 2.2-3011, so the City is entitled to sovereign immunity from Martin's whistle blower claim, but Wilhelm is not. Thus, the circuit court's judgment granting the motion to dismiss that claim against the City is affirmed. But we reverse the ruling granting Wilhelm's motion to dismiss. We do not reach the City's arguments on the circuit court's judgments on the demurrer and summary judgment motion because they are moot.

There are genuine issues of material fact in dispute concerning the basis of Wilhelm's decision to terminate Martin, so the circuit court correctly denied summary judgment on the

- 16 -

whistle blower claim.  Wilhelm was not Martin's employer under Code § 40.1-2, so the circuit court correctly granted summary judgment for Wilhelm on the retaliation claim under Code § 40.1-27.3.  For these reasons, we affirm the circuit court's judgment in part, reverse it in part, and remand the case for further proceedings consistent with this opinion.

*Affirmed in part, reversed in part, and remanded.*